**AMERICAN STEAMSHIP COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 758, Docket 34586.

United States Court of Appeals,
Second Circuit.

Argued May 6, 1970.

Decided May 28, 1970.

Peter Lewis Sill, Cadwalader, Wickersham & Taft, New York City, for appellant.

Bennet N. Hollander, Lee A. Jackson, William Massar, Attorneys, Department of Justice, Johnnie M. Walters, Asst. Atty. Gen., H. Kenneth Schroeder, Jr., U. S. Atty., for appellee.

Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON, District Judge.*

WATERMAN, Circuit Judge:

The appellant taxpayer in this suit is a New York corporation which owns and operates commercial vessels on the Great Lakes. From 1960 through 1963 the corporation whose tax claims are inherited by the appellant successor corporation [1] uniformly insured its vessels against casualty damages by means of policies containing $25,000 deductible clauses. As a result of these provisions, the cost of the insurance was reduced to approximately one third of what the costs would have been without the deductible clauses,[2] and the steamship com-

---

* Of the District of Montana, sitting by designation.

1. The original taxpayer merged in 1967 into Oswego Steamship Corporation, which then changed its name to American Steamship Company.

2. The parties stipulated that:

    12. For the years in question, American maintained insurance on its vessels which insurance provided that the first $25,000 of loss on each accident would be borne by American and only the amount

pany absorbed sizeable losses which, because of the deductible clauses, were not compensated. In effect, the company acted as a self-insurer for all of its losses to its property up to $25,000. During the four years in question the parties stipulated [3] that the company itself bore $1,312,556 in casualty losses which, individually, were less than $25,000 each; and that the company bore an additional $430,084.73 as a result of casualty losses which totaled more than $25,000 in each individual case, of which the threshold $25,000 of each loss was borne by the company and the remainder in excess of that sum was borne by the insurance company.

Section 1231 of the Internal Revenue Code [4] provides that if recognized gains from sales, exchanges, and involuntary

---

of loss in excess of $25,000 would be reimbursed by the insurance company. Thus, American was a "self-insurer" with respect to the first $25,000 of loss on each accident. The amount of insurance premiums paid with respect to the years in question, which amounts were deducted on American's Federal income tax return on line 2, page 1 as a "cost of operation" offsetting gross receipts, were as follows:

(a) 1960—$556,141.67
(b) 1961— 632,939.58
(c) 1962— 636,221.32
(d) 1963— 607,665.18

13. If American had not chosen to be a "self-insurer" with respect to the first $25,000 of loss on each accident, but, instead, had maintained the normal form of insurance on its vessels which provides for a $500 "deductible," the amount of estimated net insurance premiums with respect to the years in question which would have been paid and which would have been deductible by American as a "cost of operation" would have been as follows:

a. 1960—$1,670,343
b. 1961— 1,793.521
c. 1962— 1,858,671
d. 1963— 1,812,787

3. The parties stipulated that:

10. With respect to the years in question, American deducted the amounts listed below on its Federal income tax returns on line 20, page 1 (line 19, page 1 for 1960) of the respective returns as "losses by fire, storm, shipwreck, or other casualty or theft." The amounts so listed below are a true and correct statement of the amount of loss suffered by American in the respective years and not compensated for by insurance:

(a) 1960—$666,104.29
(b) 1961— 419,843.59
(c) 1962— 381,245.55
(d) 1963— 275,457.30

11. With respect to the casualty losses suffered by American in the respective years, these losses may be broken into two categories. The first category constitutes losses not in excess of $25,000 and which, consequently, were not compensated for by insurance. The Defendant does not question that the amounts in this first category constitute proper deductions as claimed on American's Federal income tax returns. The amounts in the second category constitute losses involving accidents where the total amount of loss exceeded $25,000. In this case, American recovered from the insurance company amounts in excess of the first $25,000 of loss. With respect to this second category, the amounts of loss borne by American are as follows:

a. 1960—$253,298.93
b. 1961— 47,886.52
c. 1962— 98,752.51
d. 1963— 30,146.77

4. Section 1231(a) reads as follows:

§ 1231. Property used in the trade or business and involuntary conversions

(a) General rule.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For purposes of this subsection—

(1) in determining under this subsection whether gains exceed losses, the gains described therein shall be included only if and to the extent taken into account in computing gross income and the losses described therein shall be included only if and to the

conversions of real estate or depreciable property used in a trade or business exceed recognized losses from such transactions or occurrences in any given tax year, the net gain shall be treated as capital gain. If, on the other hand, such recognized losses exceed the gains, the gains and the losses are treated as ordinary income and ordinary losses rather than as capital gains and losses. Casualty losses of the kind suffered by the taxpayer in this case qualify as involuntary conversions under the statute. Thus, where the gains described in Section 1231 exceed the losses described therein, taxpayer's casualty losses serve only to reduce the amount of its capital gains recognized pursuant to the section, just as capital losses are netted against capital gains pursuant to Sections 1211 and 1222. Were it not for Section 1231, casualty losses could be deducted directly from ordinary income under Section 165 (a).

Inasmuch as American Steamship Company recognized more gains than losses under Section 1231 in each of the relevant tax years, 1960–1963, it was to its advantage to exclude all of its casualty losses, if possible to do so, from Section 1231 treatment so that these losses could be deducted from ordinary income pursuant to Section 165(a) rather than be netted against Section 1231 capital gains. During the tax years in question, the last paragraph of Section 1231(a) provided that Section 1231 did not apply to any casualty loss of the type suffered by this taxpayer if the loss were one "in respect of which the taxpayer is not compensated for by insurance in any amount." Accordingly, taxpayer tried to bring all the casualty losses it be-

lieved it had suffered as a "self-insurer" within this proviso, and on the relevant returns deducted from gross income all the casualty losses it suffered that did not exceed $25,000 and deducted $25,000 from gross income for the casualty losses it incurred that exceeded that amount.

The Commissioner agreed with taxpayer that each occurrence that resulted in a total loss of less than the $25,000 deductible amount, and for which taxpayer was a self-insurer, and which was of course "not compensated for by insurance in any amount" was a loss excludable from the capital loss treatment prescribed in Section 1231. However, the Commissioner concluded that in those instances where the Company received some insurance money for occurrences that had resulted in losses greater than $25,000, each of the $25,000 deductible amounts thereby borne by the Company could not be excluded from the capital loss treatment Section 1231 prescribed and could not be deducted from ordinary income. Taxpayer, preserving its rights by paying under protest, complied with the Commissioner's interpretation of the statute, paid the deficiencies asserted, filed claims for refunds to no avail, and then sued in the United States District Court for the Western District of New York for the refunds due it if its treatment of the character of these losses was correct. The trial judge agreed with the Commissioner's interpretation and held that the disputed losses were to be treated as capital losses under Section 1231 rather than as deductions from gross business income.

The lower court stated that this result is clearly required by the language in Section 1231(a) which permits deduc-

extent taken into account in computing taxable income, except that section 1211 shall not apply; and

(2) losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

In the case of any property used in the trade or business and of any capital asset held for more than 6 months and held for the production of income, this subsection shall not apply to any loss, in respect of which the taxpayer is not compensated for by insurance in any amount, arising from fire, storm, shipwreck, or other casualty, or from theft.

tions from ordinary income only for "any loss, in respect of which the taxpayer is not compensated for by insurance in any amount." The court reasoned that because some insurance is received in compensation for casualties of more than $25,000, the $25,000 borne by the company does not qualify as a loss "not compensated for by insurance in any amount."

We recognize at the outset that an unassailable decision in this case is difficult if not impossible to reach, simply because the distinction drawn by the statute between losses which are completely uncompensated for by insurance and losses which are compensated for in some amount does not seem to serve any rational policy. According to a 1958 report of the Senate Finance Committee,[5] the reason that a deduction from ordinary income is permitted in cases where a business taxpayer suffers a completely uninsured casualty loss is that the cost of insurance premiums can be deducted as a business expense; thus if the taxpayer elects to become a self-insurer and to absorb its losses directly, rather than to pay insurance premiums, he should be placed in no different tax position. Logically it seems that this rationale should extend also to taxpayers who decide to insure part of the value of their property against casualty loss, but elect to bear the risk of the loss of the remainder of that value as self-insurers rather than to pay the additional insurance premiums necessary to secure complete insurance coverage. For some reason, however, Congress elected in Section 1231(a) not to achieve this result, but provided instead that taxpayers who receive some insurance compensation for a casualty loss, but who do not receive total compensation,[6] suffer a capital loss rather than an ordinary loss.[7]

There are two kinds of insurance coverage where a taxpayer might receive the partial insurance compensation just described. One is coverage provided by a policy containing a deductible clause, as in the present case, where the taxpayer is insured against loss only above a certain dollar amount, and is a self-insurer for losses suffered below that threshold. The second is coverage provided by a policy which provides for compensation only up to a certain percentage of loss or up to a certain maximum dollar figure, even though the total amount of loss may be greater than this limitation. Thus, a taxpayer may insure a property worth $50,000 for only $40,000, or he may insure a property for only four-fifths of whatever casualty loss, however great or small, he may suffer.

If the phrase "not compensated for by insurance in any amount" contained in Section 1231(a) is to have any meaning, it must exclude losses incurred under either or both of the two kinds of insurance coverage just described from

---

5. See Senate Fin. Comm. Rep. on the Technical Amendments Act of 1958, S.Rep. No. 1983, 85th Cong., 2d Sess. 74–75, 203–204 (1958).

6. The anomalous distinction between partly self-insured taxpayers and wholly self-insured taxpayers has been removed by the Tax Reform Act of 1969, P.L. 91–172, 83 Stat. 487. Section 516(b) of that Act, 83 Stat. 646, amends Section 1231 of the IRC to provide that whenever the recognized loss resulting from casualties exceeds the recognized gain resulting from casualties, the difference is ordinary rather than capital loss.

7. Provided, of course, that when the recognized gains and recognized losses on sales, exchanges, and involuntary conversions of business property, including the recognized losses arising from casualties, are combined, the net overall result is a gain; if the combined package results in a net loss, the total of the gains is ordinary business income and the total of the losses is deductible from ordinary business income.

In the case of this taxpayer the recognized gains exceeded the recognized losses, and that condition obtains whether the interpretation we place on the statute or the interpretation the Commissioner placed on it prevails. The discussion in the opinion is predicated thereon.

treatment as ordinary losses. The bare language of the statute admittedly could apply to both types of coverage, and there is nothing in the language of the statute itself to indicate that it was intended to apply to one type but not the other.

Nonetheless, we find merit in appellant's argument that the statute should not apply to losses incurred by taxpayers because of threshold deductible clauses in their insurance policies, and that these losses should be treated as ordinary losses and not capital losses. The reason we so hold is that the legal interpretation reached below in this case can give rise to results which are substantially more arbitrary than in cases where the taxpayer is insured only up to a maximum percentage of loss or a maximum dollar figure. If the taxpayer in the present case as a result of a single occurrence were to suffer a casualty loss of $25,000 and hence were to receive no insurance compensation at all because of the deductible clause, the Commissioner concedes that for tax purposes the $25,000 loss would be an ordinary loss. However, if the company suffered a loss of $25,001, and received one dollar in compensation from the insurance company, the Commissioner contends, and the lower court held, that the remaining $25,000 loss borne by the taxpayer would be transmuted from an ordinary loss into a capital loss. That a one dollar—or for that matter, one cent—variation in the amount of a casualty could so change the character of a much larger loss seems to us so arbitrary that Congress could not have intended this result. Nothing in the legislative history cited by either party indicates that Congress directed its attention in debate or in committee to such a situation, and we have no reason to suppose that it would have reached a different conclusion than we reach here as to the proper outcome of the instant case.

The Sixth Circuit has reached this same result, interpreting Section 23(f) of the 1939 Code, which permitted ordinary income deductions for "losses * * * not compensated for by insur-ance or otherwise." See Kentucky Utilities Co. v. Glenn, 394 F.2d 631 (6 Cir. 1968), aff'g 250 F.Supp. 265 (W.D.Ky. 1965). There the court found that the amount deductible under the insurance policy constituted a separate, uncompensated loss within the meaning of the above.

We therefore hold that only losses greater than the maximum amount of coverage provided by an insurance policy and not losses incurred pursuant to a threshold deductible clause, are to be considered capital losses under Section 1231(a), and agree with taxpayer that the deductions it took from gross business income for its casualty losses not compensated for by insurance were properly taken.

Reversed and remanded.